**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Wade Nelson,

          Plaintiff,

v.

Newmark Knight Frank, et al.,

          Defendants.

No. CV-17-03150-PHX-DLR

**ORDER**

Before the Court is Defendants' motion to dismiss Plaintiff's first amended complaint.[1] (Doc. 38.) The motion is fully briefed and neither party requests oral argument. Also before the Court is Plaintiff's motion for leave to file a second amended complaint. (Doc. 59.) For the following reasons, Defendants' motion to dismiss is granted in part and denied in part, and Plaintiff's motion for leave to amend is denied.[2]

## I. Background

For the purposes of this motion, the Court accepts the facts alleged in the complaint as true. In early 2015, Plaintiff developed a business concept whereby real estate services companies perform property tax appeals and consulting on behalf of their commercial customers. Beginning in April 2015, Plaintiff presented his business plan to several

---

[1] Defendants are G&E Real Estate Management Services, Incorporated (d/b/a Newmark Knight Frank) and BGC Partners, Incorporated.

[2] On November 21, 2018, Plaintiff filed a motion for summary judgment on Count I. (Doc. 73.) Because the Court dismisses Count I in this order, Plaintiff's motion for summary judgment is denied as moot.

commercial real estate services companies, recommending that the companies hire him to develop an in-house Tax Appeal Group ("TAG"). By July 2015, Plaintiff had received multiple employment offers, including from Defendants.

Plaintiff and Defendants negotiated terms of employment throughout June and July 2015. Plaintiff alleges that, as part of these negotiations, Defendants agreed to provide Plaintiff with an administrative assistant and five producers for the first year, and four additional producers in the second.[3] Based on Defendants' assurances about their commitment to TAG and the underlying business plan, Plaintiff accepted their offer. On August 6, 2015, Plaintiff accepted Defendants' terms of employment, specifying a 3-year employment agreement. Plaintiff subsequently was furnished with the formal Employment Agreement, which did not include the specific promises about the number of producers to be hired.

Plaintiff began work with Defendants on September 1, 2015. By April 2016, Plaintiff still had not received approval to hire any producers. Unable to get approval, Plaintiff met with Defendants' Chief Executive Officer, Barry Gosin, in early April 2016 to discuss delays in the new hire process. During this meeting, Gosin informed Plaintiff that his immediate supervisor, Randy Buddemeyer, would soon be replaced.

Shortly after Plaintiff's meeting with Gosin, Buddemeyer traveled to Arizona to meet with Plaintiff. During this meeting Buddemeyer directed Plaintiff to fabricate the TAG revenue forecast to reflect an inflated, fictitious revenue figure, and threatened to fire him if he did not. Buddemeyer also informed Plaintiff that the forecast would be passed on to potential investors. On April 11, 2016, Plaintiff produced the fictitious revenue forecast.

In June 2016, Plaintiff began to express concerns about his fictitious forecast to other employees. On June 15, 2016, Plaintiff reached out to Kathy Keeley, Defendants' regional head of human resources. Before agreeing to report on the fictitious forecast, Plaintiff sought assurances from Keeley that his complaint would be kept confidential and

---

[3] Based on the complaint, a producer refers to a staff salesperson. (Doc. 37 ¶ 11.)

1    that he would not be fired in retaliation for coming forward.  Keeley offered these

2    assurances, and Plaintiff reported his concerns.

3           Still without approval to hire producers, Plaintiff complained to Buddemeyer on

4    June 20, 2016, and again on July 8, 2016.  Soon after, on July 12, 2016, Buddemeyer

5    informed Plaintiff that it was too late in the fiscal year to get approval for new hires;

6    Plaintiff would not be able to hire any producers in 2016.

7           On July 14, 2016, Plaintiff again reported to Keeley his concerns about the

8    fabricated revenue forecast.  Keeley, in turn, reassured him that he would not be retaliated

9    against.  Keeley also instructed Plaintiff that he should report his allegations to Gosin.

10          On September 1, 2016, Plaintiff reported his allegations to Gosin.  During this

11   conversation, Plaintiff also informed Gosin that he still was unable to hire any producers.

12   Two weeks later, on September 14, 2016, Defendants fired Plaintiff, ostensibly due to

13   TAG's unprofitability.

14          Plaintiff thereafter filed this suit, asserting claims for promissory estoppel based on

15   alleged pre-employment promises (Count I); wrongful termination in violation of the

16   Arizona Employment Protection Act ("AEPA"), A.R.S. § 23-1501 *et seq.* (Count II); and

17   promissory estoppel and breach of contract based on promises by Defendants' human

18   resources department to protect Plaintiff from retaliation (Counts III and IV).  (Doc. 37.)

19   **II.  Motion to Dismiss**

20          **A.  Legal Standard**

21          When analyzing a complaint for failure to state a claim for relief under Federal Rule

22   of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and

23   construed in the light most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568

24   F.3d 1063, 1067 (9th Cir. 2009).  Legal conclusions couched as factual allegations are not

25   entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and

26   therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re*

27   *Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).  To avoid dismissal, the complaint

28   must plead sufficient facts to state a claim to relief that is plausible on its face.  *Bell Atl.*

1  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard "is not akin to a

2  'probability requirement,' but it asks for more than a sheer possibility that a defendant has

3  acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

4  Ordinarily, when ruling on a motion to dismiss for failure to state a claim, "the scope

5  of review . . . is limited to the contents of the complaint."  *Marder v. Lopez*, 450 F.3d 445,

6  448 (9th Cir. 2006).  Other evidence may be considered, however, if "the documents'

7  'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on

8  them."  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Parrino v. FHP,*

9  *Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1988)).  Accordingly, in ruling on Defendants' motion

10  the Court will consider the Employment Agreement because its authenticity is not

11  contested and Plaintiff's complaint necessarily relies on its terms and conditions.

12  **B. Discussion**

13  Plaintiff's claims fall into two categories.  The first, which includes Plaintiff's

14  promissory estoppel claim, focuses on allegations that Plaintiff was induced into accepting

15  employment with Defendants by promises to provide, among other things, a certain number

16  of new employees to the TAG.  The second concerns allegations of retaliation against

17  Plaintiff for his whistleblowing activity, and includes Plaintiff's AEPA, breach of contract,

18  and promissory estoppel claims.  The Court discusses each category in turn.

19  **1.  Promissory Estoppel (Count I)**

20  Promissory estoppel requires: (1) a promise; (2) which the promisor should

21  reasonably foresee would cause the promisee to rely; and (3) upon which the promisee

22  reasonably and justifiably relies to his detriment.  *Jackson v. Wells Fargo Bank, N.A.*, 13-

23  CV-617-PHX-SPL, 2015 WL 13567130, at *14 (D. Ariz. Aug. 31, 2015) (citing

24  *Higginbottom v. State*, 51 P.3d 972, 977 (Ariz. Ct. App. 2002)).[4]  A claim for promissory

25  _____

26  [4] The parties dispute what law governs Plaintiff's claim.  Defendants contend that New York law applies to Plaintiff's promissory estoppel claim because of the choice-of-law provision in the Employment Agreement, while Plaintiff claims that Arizona law

27  applies because the "[E]mployment [A]greement was executed and made" in Arizona. (Doc. 46 at 7.)  Because the result under either state's law is the same, the Court finds this

28  dispute of no moment.  New York does not recognize promissory estoppel claims when "no promise arises that is separate from an employment relationship."  *See e.g., Dalton v.*

- 4 -

estoppel cannot exist as a matter of law, however, when the subject matter is governed by contract. *See, e.g.*, *Univ. Med. Ctr. Corp. v. Aetna Life Ins. Co.*, 10-CV-535-TUC-RCC, 2011 WL 13233485, at \*4 (D. Ariz. Dec. 6, 2011); *Jackson*, 2015 WL 13567130 at \*14 ("There can be no implied contract where there is an express contract between the parties in reference to the same subject matter.")

Here, the Employment Agreement concerns the same subject matter as the promises made to Plaintiff during contract negotiation and "represents the entire agreement between [Plaintiff] and [Defendants] regarding the terms of [Plaintiff's] services and supersedes any previous or contemporaneous agreements or representations, written or oral."[5] (Doc. 38-1 at 4.) For instance, Plaintiff's promissory estoppel claim focuses on the number of producers he was promised during pre-contract negotiations. The Employment Agreement explicitly discusses Plaintiff's future employees, referring to all individuals reporting directly to Plaintiff collectively as the "Employee's Group." (Doc. 38-1 at 3; Doc. 46 at 4.) Plaintiff's promissory estoppel claim fails as a matter of law because it relies on promises covered by a contract. Therefore, the claim is dismissed.

## 2. AEPA, Breach of Contract, and Promissory Estoppel

Plaintiff's AEPA, breach of contract, and promissory estoppel claims all allege that Defendants wrongfully terminated him for reporting allegedly illegal activity. Defendants contend that Plaintiff's AEPA claim fails because Plaintiff did not report information that gives rise to protection under the statute, and that Plaintiff's breach of contract and promissory estoppel claims fail because they are duplicative of his AEPA claim. (Doc. 38

---

*Union Bank of Switz.*, 520 N.Y.S.2d 764, 764 (N.Y. App. Div. 1987) ("The fact that defendant promised plaintiff employment at a certain salary with certain other benefits, which induced him to leave his former job and forego the possibility of other employment in order to remain with defendant, does not create a cause of action for promissory estoppel."). Moreover, even if New York permitted a promissory estoppel claim in such circumstances, Plaintiff has not alleged reasonable reliance as that phrase is understood under New York law. *See also Village on Canon v. Bankers Tr. Co.*, 920 F.Supp. 520, 530-31 (S.D.N.Y. 1996).

[5] This proposition is undisputed. Plaintiff concedes that "[t]he [E]mployment [A]greement simply memorializes, although with less detail, the offer that was made to me and I accepted . . . ." (Doc. 46 at 7.)

at 2.)

Under the AEPA, an employer may not "terminat[e] the employment relationship of an employee in retaliation" for "the disclosure by the employee in a reasonable manner that the employee has information or reasonable belief that the employer . . . has violated, is violating or will violate the Constitution of Arizona or the statutes of this state." A.R.S. § 23-1501(A)(3)(c)(ii).  To survive dismissal, Plaintiff must adequately allege that: (1) he had information or a reasonable belief that his employer or another employee had violated an Arizona statute or constitutional provision; (2) he disclosed the information or belief to an employer or a representative of the employer whom he reasonably believed was in a managerial position and had the authority to investigate the information and take action to prevent further violations; and (3) he was terminated because of the first two steps. *See Denogean v. San Tan Behavioral Health Servs. LLC*, No. CV-16-03573-PHX-DGC, 2017 WL 4922035, at \*3 (D. Ariz. Oct. 31, 2017).

Plaintiff sufficiently alleges each element to survive Defendants' motion to dismiss. For instance, with respect to the first element, Plaintiff alleges that Buddemeyer ordered Plaintiff to create a fraudulent revenue forecast.  (Doc. 37 ¶¶ 35-36, 38); *Denogean*, 2017 WL 4922035, at \*3 (finding mere suspicion of fraudulent billing sufficient to survive motion for summary judgment on first element).  Next, Plaintiff alleges that he told Keeley that "his [s]upervisor order[ed] [him] to prepare a fabricated revenue forecast report." (Doc. 37 ¶ 50.)  Plaintiff also raised this issue numerous times with Gosin.  (¶ 52.)  Within nine days of reporting the alleged fraud to Gosin, Plaintiff was terminated.  (¶ 54.)  Taken together, Plaintiff has plausibly alleged that (1) he reasonably believed that Defendants committed fraud, (2) he disclosed this information to representatives of his employer whom he reasonably believed could investigate and address the violations; and (3) he was terminated as a result.[6]

_____

[6] Defendants highlight that Plaintiff, in his response brief, states that he "did not know [Defendants] had broken Arizona law" when he reported the conduct. (Doc. 46 at 17; Doc. 49 at 3-4.)  The AEPA, however, does not require knowledge, it requires reasonable belief.  Based on the allegations in the complaint, Plaintiff has sufficiently alleged that he reasonably believed Defendants were committing fraud.

The Court agrees, however, that Plaintiff's breach of contract and promissory estoppel claims are duplicative of Plaintiff's AEPA claim. "As a matter of judicial economy, courts should dismiss a claim if it is duplicative of another claim in the suit." *W. Veg-Produce, Inc. v. Lexy Grp.*, No. 18-CV-180-ODW (AGRx), 2018 WL 1804689, at \*5 (C.D. Cal. Apr. 16, 2018) (citation omitted). Courts have discretion to dismiss as duplicative claims that allege the same facts and the same injury. *See C&K Nuco, LLC v. Expedited Freightways, LLC*, No. 13-C-4006, 2014 WL 4913446, at \*12 (N.D. Ill. Sept. 30, 2014); *see also First Home Bank v. Hershey Interests, Inc.*, 18-CV-1584-ODW-AS, 2018 WL 3460148, at \*2 (C.D. Cal. Jul. 16, 2018) (dismissing duplicative claims).

Here, Plaintiff's breach of contract claim alleges that Defendants formed an "implied contract" with Plaintiff when Keeley promised that Defendants would not retaliate against Plaintiff in exchange for his reporting of purportedly illegal behavior of other company employees. (Doc. 37 at 15.) Likewise, Plaintiff's promissory estoppel claim, which is pled in the alternative to his breach of contract claim, alleges that Defendants violated their promise not to retaliate if he came forward with information about illegal behavior.

All three claims are based upon the same operative facts: Defendants' alleged retaliation against Plaintiff for reporting the perceived illegal behavior of other company employees. (Doc. 37 ¶¶ 68, 81-92, 93-94.) Additionally, all three claims allege the same injury—that Plaintiff was fired in retaliation for reporting. In essence, Plaintiff alleges in Counts III and IV that Defendants agreed or promised not to violate state law. If Defendants terminated Plaintiff in violation of the AEPA, however, Plaintiff's remedy is statutory, not contractual or in tort. Because Plaintiff's breach of contract and promissory estoppel claims are duplicative of his AEPA claim, Counts III and IV are dismissed.

**III. Motion for Leave to Amend**

On October 5, 2018, Plaintiff moved for leave to file a second amended complaint, seeking to add a claim for breach of an implied-in-fact contract. (Doc. 59.) This request is untimely, as the Scheduling Order set a September 30, 2018 deadline for amending

1    pleadings.  (Doc. 33.)

2          When a party seeks leave to amend a complaint after entry of a pretrial scheduling

3    order and after the designated deadline for amending pleadings has passed, the party must

4    first show good cause for amending the scheduling order under Federal Rule of Civil

5    Procedure 16(b)(4).  *See Johnson v. Mammoth Recreation, Inc.*, 975 F.2d 604, 608 (9th

6    Cir. 1992).  "Good cause" means the scheduling deadlines cannot be met despite the party's

7    diligence.  *Id.* at 609 (citing 6A Wright, Miller & Kane, Federal Practice and Procedure §

8    1522.1 at 231 (2d ed.1990)).  "The pretrial schedule may be modified if it cannot

9    reasonably be met despite the diligence of the party seeking the extension.  If the party

10   seeking the modification was not diligent, the inquiry should end and the motion to modify

11   should not be granted."  *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir.2002)

12   (internal quotation and omitted).  Moreover, a district court may deny as untimely a motion

13   for leave to amend filed after the scheduling order's deadline where the moving party fails

14   to request a modification of the scheduling order at all.  *See Johnson*, 975 F.2d at 608-09.

15         Plaintiff fails to acknowledge in his motion that the deadline for amending pleadings

16   has passed.  He also fails to show good cause for altering those deadlines to accommodate

17   an amending pleading at this late stage.  Accordingly, Plaintiff's untimely motion for leave

18   to amend is denied.[7]

19         **IT IS ORDERED** that Defendants' motion to dismiss Plaintiff's amended

20   complaint (Doc. 37) is **GRANTED in part** and **DENIED in part**.  Counts I, III, and IV

21   are dismissed, but Count II may proceed as explained herein.

22         **IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a second

23   amended complaint (Doc. 59) is **DENIED**.

24   //

25

26         [7] Even if Plaintiff's motion to amend had been timely, the proposed amendments
     likely are futile.  As a matter of law, an implied-in-fact contract fails when it runs counter
27   to the terms of a written contract.  *See, e.g.*, *Kravitz v. Int'l Bus. Machs., Corp.*, 458 Fed.
     App'x 18, 20 (2d Cir. 2012); *Jackson*, 2015 WL 13567130 at *14.  Here, Plaintiff's
28   Employment Agreement states that it "represents the entire agreement between Employee
     and the Company regarding the terms of Employee's services and supersedes any previous
     or contemporaneous agreements or representations, written or oral."  (Doc. 38-1 at 4.)

1    **IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (Doc.

2    73) is **DENIED** as moot.

3         Dated this 7th day of December, 2018.

Douglas L. Rayes
United States District Judge