WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wade Nelson, | No. CV-17-03150-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Newmark Knight Frank, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion for Summary Judgment.[1] (Doc. 88, "Mot.".) Plaintiff, a pro se litigant, responded and Defendants replied. (Doc. 91, "Resp."; Doc. 92, "Repl.".) Defendants filed a separate statement of facts (*see* Doc. 89), but Plaintiff did not. Defendants move for summary judgment on the sole remaining claim in Plaintiff's Amended Complaint (Doc. 37). (Mot. at 1.) Both parties requested oral argument, but the Court elects to resolve the Motion without it. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."). Because no genuine issue of material fact exists and the undisputed facts entitle Defendants to summary judgment, the Court will grant the Motion.

## I. PROCEDURAL DEFECTS

As a preliminary matter, the Court is compelled to address the multiple deficiencies in Plaintiff's Response. First, Plaintiff violated Local Rule of Civil Procedure 56.1(b) by not filing a controverting statement of facts. Local Rule 56.1(b) requires a party opposing summary judgment to

---
[1] Defendants are G&E Real Estate Management Services, Inc. (d/b/a Newmark Knight Frank) and BGC Partners, Inc.

> file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. . . .

If an opposing party fails to file a controverting statement of facts, the Court may deem the moving party's statement of facts to be true. *Szaley v. Pima Cty.*, 371 F. App'x 734, 735 (9th Cir. 2010); *see also Pierson v. City of Phoenix*, No. CV-16-02453-PHX-DLR, 2017 WL 4792122, at *1 (D. Ariz. Oct. 24, 2017) ("The court may deem a movant's separate statement of facts to be true if the nonmoving party does not comply with [Local Rule 56.1]"). "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion should be granted." *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988.) Because Plaintiff omits a controverting statement of facts, the Court considers Defendants' statement of facts (*see* Doc. 89) as true.

Second, Plaintiff's Response violates Federal Rule of Civil Procedure 56(c) and Local Rule of Civil Procedure 56.1(e) by not citing to specific evidence in the record. "Memoranda of law filed . . . in opposition to a motion for summary judgment . . . must include citations to the specific paragraph in the statement of facts that supports assertions made in the memoranda regarding any material fact on which the party relies . . . ." LRCiv 56.1(e). Plaintiff's Response contains snippets of his deposition with editorial comments attempting to modify the meaning of his responses, unsupported by evidence, without citations to the record. (*See, e.g.,* Repl. at 14-16.) This is insufficient under Local Rule of Civil Procedure 56.1(e).

Third, Plaintiff's Response violates Local Rule of Civil Procedure 7.2(e)(1) by exceeding seventeen (17) pages. Plaintiff's Response is twenty-three (23) pages excluding the certificate of service. Even despite these notable deficiencies, however, the Court can

still appropriately consider whether Defendants are entitled to summary judgment on Plaintiff's remaining AEPA claim.

## II. BACKGROUND

This case arises out of an alleged whistleblower protection violation under the Arizona Employment Protection Act ("AEPA") when Defendant Newmark Knight Frank ("Company") fired Plaintiff on September 14, 2016 due to "position elimination." (Doc. 89-1 at 59-62.) About a year earlier in September 2015, the Company hired him to lead a new business group, the Tax Appeal Group ("TAG"), in Phoenix, Arizona. (*Id*. at 2-3 ¶ 3, 15.) While employed there, Plaintiff reported to Mr. Buddemeyer. (*Id*. at 2-3 ¶¶ 2-3.)

Plaintiff's sole remaining claim under the AEPA almost entirely concerns a series of internal emails containing fake estimates and whether Plaintiff reasonably believed he, the Company, and/or its employees violated Arizona law. Specifically, Plaintiff asserts that Buddemeyer ordered him to send him an email with a revenue forecast or "pipeline" or he would lose his job.[2] (*Id*. at 34-36.) He sent Buddemeyer an email on April 11, 2016 titled: "Wade pipeline – current estimated *potential* fees by state/project" ("pipeline email") concerning about $1.38 million dollars of possible Company revenue. (*Id.* at 52) (emphasis added). Two days later, Buddemeyer responded by asking Plaintiff: "how much of the fee should/could be earned in calendar year 2016?" (*Id.* at 51.) Plaintiff replied a few hours later: "[t]he work is done and fees charged in the current 2016 year but the benefits in the form of refunds with interest cover up to four back years." (*Id.*) The next morning, Buddemeyer again inquired whether the pipeline email's fees were "earned 100%." (*Id.*) Plaintiff did not immediately respond to this email. (*See id*. at 50.)

Concerned about the accuracy of the estimates after inquiring twice whether any fees were actually earned, (*id.* at 3 ¶ 8), Buddemeyer forwarded his email conversation with Plaintiff to Mr. Lodge, (*id.* at 50, 54-55 ¶ 3.) Buddemeyer also called Lodge that day because he doubted the accuracy of the estimates. (*Id*. at 3 ¶ 9, 55 ¶ 4.) Within an hour after

---

[2] Plaintiff also claims that he reported Buddemeyer's job threat. (*Id*. at 34-36.) However, beyond mere allegations, Plaintiff provides no facts showing Buddemeyer ordered him to create the pipeline email or that he reported the threat.

- 3 -

receiving Buddemeyer's email, Lodge emailed Plaintiff inquiring whether any fees could be recorded and requested documentation such as letters of engagement, contracts, and invoice copies in order to record them. (*Id.* at 49, 55 ¶¶ 5-6.) This documentation, Lodge stated under oath, is necessary to publicly report any fees. (*See id.* at 55-57 ¶¶ 5, 11-12.) Lodge also asked Plaintiff to "let [him] know how much of the [pipeline email fees] have been completed and maybe even invoiced." (*Id.* at 49.) Two hours after receiving Lodge's email, Plaintiff emailed Buddemeyer: "[t]hose are estimated fees." (*Id.* at 50.) Four hours after that, Plaintiff also emailed Lodge: "[n]one of it has been completed. It is all in the identification, discussion, pre-proposal phase." (*Id.* at 49, 56 ¶ 7.) At deposition, Plaintiff admitted the pipeline email estimates were "completely made up." (*Id.* at 37.)

Buddemeyer and Lodge both claim under oath that they did not tell Plaintiff the Company would use his pipeline email estimates for financial reporting purposes. (*Id.* at 4 ¶¶ 13-14, 56-57 ¶¶ 10-11.) Buddemeyer further claims he does not know whether the estimates were "used in any publicly reported data by Defendants or any affiliated Defendants' companies," (*id.* at 4 ¶¶ 13-14), while Lodge further claims he "could not use Plaintiff's [pipeline] email in connection with any internal or public report," (*id.* at 56-57 ¶¶ 10-11.) Lodge also states that "[n]othing in [Plaintiff's pipeline email] was used in any publicly reported data by Defendants or any of Defendants affiliated companies." (*Id.* at 57 ¶ 12.) While employed by the Company, Plaintiff knew that TAG "did not have the mechanisms in place" to charge or collect fees. (*Id.* at 30, 32.) Plaintiff also stated under oath that he understood Lodge's response to mean that the Company could not record any fees without further documentation. (*Id.* at 39-40.)

Nevertheless, Plaintiff claims the pipeline email estimates were used because Lodge complimented him on how impressive they were.[3] (*Id.* at 38, 44.) Plaintiff acknowledges he lacks "independent knowledge that [the pipeline email] was used outside the company,"

---

[3] Plaintiff claims this because Lodge's email allegedly says: "That's a nice looking pipeline you got there." (*Id.* at 44.) Lodge's email does say: "Looks like you have a good pipeline of activity . . . I would like to see if we can start recording any of these fees . . . ." But reviewed in context, it is clear Lodge needed to verify Plaintiff's estimates before using them.

but still believes it was publicly reported because someone told him that. (*Id*. at 43.) By admitting the fraudulent nature of the pipeline email estimates at deposition, Plaintiff claims he is "essentially admitting to securities fraud." (*Id*. at 37.) After sending the pipeline email, Plaintiff researched whistleblower protections, but "didn't look at [the situation] from an Arizona standpoint" because he "thought it was a federal violation." (*Id*. at 46) ("I thought it was an SEC violation."). Plaintiff also admits to learning about the AEPA from the attorney who drafted his initial complaint, which was filed a year after the Company fired him. (*Id.*)

Nearly five months after Plaintiff sent the pipeline email, Defendants terminated him due to "position elimination." (*Id*. at 59-62.) As a result, Plaintiff now claims he is a "federal whistleblower that is suing his previous employer." (*Id*. at 47.) Based primarily on Plaintiff's admission that he thought the Company violated federal law, Defendants move for summary judgment on his remaining AEPA claim. (Mot. at 1.)

**III. LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). The Court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. If the movant fails to carry its initial burden, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact. *Id.* at 1103. The nonmovant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the nonmovant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the nonmoving party, *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

While the Court must construe pleadings liberally, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Regardless of his pro se status, the elements that Plaintiff must prove at summary judgment and his burden of proof are not relaxed simply because he is appearing without counsel. *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986); *see also Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("an ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules" (citation omitted)).

The Ninth Circuit "has set a high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996). "As the Ninth Circuit has explained, '[w]e require very little evidence to

survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a 'searching inquiry'—one that is most appropriately conducted by the factfinder, upon a full record.'" *Drottz v. Park Electrochemical Corp.*, No. CV 11-1596, 2013 WL 6157858, at *5 (D. Ariz. Nov. 25, 2013) (quoting *Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1564 (9th Cir. 1994)). Nevertheless, the Court may still grant summary judgment on an AEPA claim when a plaintiff fails to show a genuine issue of material fact and the facts show that plaintiff did not reasonably believe Arizona law was violated. *Drottz*, 2013 WL 6157858, at *18.

## IV. DISCUSSION

### A. Arizona Employment Protection Act Claim

Defendants move for summary judgment on Plaintiff's AEPA claim. (Mot. at 1.) Plaintiff alleges that Defendants violated the AEPA's whistleblower protections by terminating him for reporting that Buddemeyer ordered him to create the fraudulent pipeline email for public reporting purposes. (Doc. 37 ¶¶ 36, 38, 54, 68.) While the Court found Plaintiff's allegations sufficient to survive dismissal, (Doc. 78 at 6), they are insufficient to survive summary judgment as explained in more detail below.

#### 1. The AEPA's Legal Framework

Under the AEPA, employers may not "terminat[e] the employment relationship of an employee in retaliation" for a "disclosure by the employee in a reasonable manner that the employee has information or reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of [Arizona]." A.R.S. § 23-1501(A)(3)(c)(ii). The employee's disclosure must be to the employer or a representative reasonably believed by the employee to be in a managerial or supervisory position who is authorized to investigate the alleged misconduct and take action to prevent future violations. *Id.* Accordingly, an AEPA claim has four elements:

> (1) *information or reasonable belief that plaintiff's employer, or another employee of the employer, has violated, is violating,*

*or will violate Arizona's constitution or statutory law*;

(2) disclosure of information or reasonable belief of a violation in a reasonable manner;

(3) to the employer or employer's representative who plaintiff reasonably believes is in managerial or supervisory position and has authority to investigate and take action to prevent further violations; and

(4) plaintiff was terminated because of the disclosure.

A.R.S. § 23-1501(A)(3)(c)(ii) (emphasis added); *see also Denogean v. San Tan Behavioral Health Servs. LLC*, No. CV-16-03573-PHX-DGC, 2017 WL 4922035, at *3 (D. Ariz. Oct. 31, 2017). By its plain language, Plaintiff only has an AEPA claim if he had information or reasonable belief that he, the Company, and/or another employee violated Arizona law. *Nelson v. Millennium Laboratories, Inc.*, No. 12-CV-01301-SLG, 2014 WL 11514329, at *8 (D. Ariz. Jun. 5, 2014). Defendants dispute whether (1) Plaintiff reported his suspected violation, or if he did, whether it was reasonably reported and (2) whether his termination was retaliatory. (Mot. at 6-7.) Again, these disputes would warrant trial *only if* Plaintiff has information or reasonable belief that he, the Company, and/or another employee violated Arizona law. *Rowberry v. Wells Fargo Bank NA*, No. CV-14-01801-PHX-DLR, 2015 WL 7273136, at *5 (D. Ariz. Nov. 18, 2015); *Nelson*, 2014 WL 11514329, at *8; *Drottz*, 2013 WL 6157858, at *18. As explained below, Plaintiff had no such information or reasonable belief.

### 2. **Predicate Violation of an Arizona Statute or Arizona's Constitution**

Under the first element, a "plaintiff must point to a predicate Arizona constitutional provision or statute that [he, another employee, or] the employer 'violated, is violating or will violate.'" *Drottz*, 2013 WL 6157858, at *16 (quoting A.R.S. § 23-1501(A)(3)(c)(ii)). "An actual violation of the predicate statute [or Arizona's constitution] need not occur." *Id.* at *17 (citing *Logan v. Forever Living Prod. Int'l, Inc.*, 52 P.3d 760, 763 (Ariz. 2002)).

- 8 -

But an employee's belief that Arizona law was violated must be *reasonable*. *Id.* Notably, information or reasonable belief of a federal violation cannot serve as a predicate violation under the AEPA. *Galati v. Am. W. Airlines, Inc.*, 205 Ariz. 290, 292-94 ¶¶ 5-15 (App. 2003).

### a. Plaintiff's Deposition Admissions Show That He Thought Federal Law, Not Arizona Law, Was Violated.

First, Defendants argue they are entitled to summary judgment because Plaintiff's deposition testimony proves he thought federal law was violated, which shows he lacked information or reasonable belief that Arizona law was violated. (Mot. at 2, 7, 9; Repl. at 3, 6.) Plaintiff said at deposition that he was not thinking about the situation from an Arizona standpoint and that he thought it was a federal violation. (*See* Doc. 89-1 at 46.)

Plaintiff disputes how to interpret his deposition admission relating to how he thought federal law was violated.[4] (Resp. at 15.) In effect, Plaintiff attempts to alter his deposition testimony by inserting ex post facto, unsubstantiated editorial comments. (*See, e.g., id.* at 14.) As Defendants correctly highlight, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." (Repl. at 4 (citing *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (citations omitted)). There are even situations when a court can disregard a self-serving *affidavit* at the summary judgment stage. *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (disregarding self-serving affidavit at summary judgment because it "states only conclusions, and not such facts as would be admissible in evidence."). *Phan*'s reasoning easily applies here — Plaintiff cannot create a triable issue of fact with unsupported statements, asserted in a *pleading*, that contradict deposition testimony taken under oath. *Id.* Regardless, the Court need not consider Plaintiff's unsupported conclusions of genuine issues of material fact as evidence creating triable facts requiring trial. *See Liberty Lobby*, 477 U.S. at 247–48. The Court consequently finds that Plaintiff fails to show a genuine issue of material fact exists and turns to whether the facts entitle Defendants to summary judgment.

---

[4] Again, Plaintiff's Response is unsupported by evidence and omits citations to Defendants' statement of facts. (*See generally* Resp.)

- 9 -

Two cases relating to AEPA claims warrant granting Defendants' Motion on their first ground for relief. *See Rowberry*, 2015 WL 7273136; *see also Nelson*, 2014 WL 11514329. Both cases reason that a plaintiff cannot reasonably believe a violation of Arizona law occurred when they admit they thought a federal violation occurred. *Id.* For instance, the *Rowberry* court found that a plaintiff did not reasonably believe an Arizona violation occurred because she admitted at deposition that she thought her employer violated "federal reserve rules, regulations, and the like." *Rowberry*, 2015 WL 7273136, at *4. Consequently, the *Rowberry* court granted summary judgment because it found "no reasonable jury could conclude [plaintiff] engaged in activity protected by the AEPA." *Id.* at *4-5. The *Nelson* court made a similar finding in granting summary judgement because the plaintiff there "testified that she believed that [her employer] was violating only a federal anti-kickback law." *Nelson*, 2014 WL 11514329, at *8. Both cases establish that a plaintiff must reasonably believe that an *Arizona*, not federal, violation occurred. When a plaintiff believes a federal violation occurred instead, summary judgment is appropriately granted against him or her. *Drottz*, 2013 WL 6157858, at *18.

The facts in *Rowberry* and *Nelson* are almost identical here. At deposition, Plaintiff admits he thought the Company violated federal securities laws. (Doc. 89-1 at 46) ("I didn't look at [the situation] from an Arizona standpoint. . . . I thought it was a federal violation. . . . I thought it was an SEC violation."). Moreover, Plaintiff claims he is a "federal whistleblower," (*id*. at 47), who learned about the AEPA from the attorney who drafted his initial complaint, (*id*. at 46). These admissions show that Plaintiff thought a federal violation occurred and Plaintiff offers no rebuttal evidence showing otherwise. Based on these deposition admissions, no reasonable fact-finder could conclude that Plaintiff reasonably believed Arizona law was violated when he explicitly admits that he thought federal law was violated.

### b. **Plaintiff's Belief That Arizona Law Was Violated is Unreasonable.**

Second, Defendants argue that Plaintiff's belief that Arizona law was violated is unreasonable, even setting aside Plaintiff's fatal deposition admissions. Plaintiff argues that he reasonably believed Arizona law was violated because (1) additional research and discussions with attorneys, at unknown dates and times, made him realize Arizona law was or would be violated, (*id.* at 22); (2) his training and experience in real estate made it probable he would recognize a violation of Arizona law; and (3) he admitted under oath that he violated Arizona law to numerous individuals and this Court, (*id.* at 11-12).

The Court finds that Buddemeyer and Lodge's numerous emails inquiring whether the estimates were accurate or reportable foreclose the possibility that Plaintiff's belief was reasonable.[5] (Doc. 89-1 at 49-51; 4 ¶¶ 13-14; 56-57 ¶¶ 10-11.) Lodge explicitly told Plaintiff that he could not record the estimates without documentation. (*Id.* at 49-50.) Indeed, Plaintiff admittedly understood Lodge's email to mean the Company could not report his estimates without documentation. (*Id.* at 39-40.) Moreover, any information Plaintiff received from the attorney who drafted and filed his initial complaint a year after he was fired does not support the notion that *he* reasonably believed the Company violated Arizona law at the time. (*See id*. at 46.) Lastly, Plaintiff's claims concerning his personal research of Arizona law and alleged knowledge from previous experiences and trainings is either unsubstantiated or too generalized to sufficiently demonstrate that he reasonably believed Arizona law was violated. For these reasons, the Court alternatively finds that no reasonable fact-finder could conclude Plaintiff reasonably believed Arizona law was violated, even setting aside his fatal deposition admissions.

## V. CONCLUSION

The Court finds no genuine issue of material fact exists that would warrant a trial. Additionally, the Court finds the undisputed facts favor granting Defendants' Motion because they show that Plaintiff had neither information nor a reasonable belief that *Arizona* law, let alone any law, was violated.

---

[5] Both Buddemeyer and Lodge also stated under oath that they did not inform Plaintiff that the pipeline email estimates could be used for financial reporting purposes. (*Id*.)

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 88) is **GRANTED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 17th day of December, 2019.

_____
Honorable Susan M. Brnovich
United States District Judge